UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARVARD DRUG GROUP, LLC,                    Case  No. 08-13617

             Plaintiff,                    Victoria A. Roberts
vs.                                        United States District Judge

STEPHEN D. LINEHAN,                         Michael Hluchaniuk
                                           United States Magistrate Judge

           Defendant.

_____/

**REPORT AND RECOMMENDATION**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 9)**

## I.   PROCEDURAL HISTORY

The original complaint in this matter was filed on August 20, 2008.  (Dkt. 1).  An answer to the complaint, with affirmative defenses, was filed on October 15, 2008.  (Dkt. 5).  The present motion for summary judgment was filed by plaintiff on December 23, 2008.  (Dkt. 9).  Defendant filed a response to the motion on January 14, 2009 and plaintiff replied to the response on January 20, 2009.  (Dkt. 11, 13).

A first amended complaint was filed on February 10, 2009.  (Dkt. 24).  After the resolution of some scheduling issues, the parties were directed to file supplemental pleadings with respect to the motion for summary judgment.  (Dkt.

39).  Defendant filed a supplemental brief on August 19, 2009 and plaintiff

supplemented its brief on September 2, 2009.  (Dkt. 40, 41).  The parties filed a

statement of resolved and unresolved issues on September 8, 2009.  (Dkt. 42).

Oral argument was held on September 22, 2009.

## II.    RELEVANT FACTS

The relevant facts in this matter are largely uncontested.  During the relevant

time periods plaintiff, Harvard Drug Group, LLC (Harvard) was a wholesale

distributor of certain medications and related products and defendant, Stephen D.

Linehan (Linehan or defendant) was the chairman and CEO of Soporex

Respiratory, Inc. d/b/a Independent Home Pharmacy (Soporex), which was a retail

distributor of such products.  On May 22, 2008, Soporex was in debt to Harvard

for almost two million dollars for purchases that had been made on a credit basis

and, in an apparent attempt to continue to do business with Harvard, entered into

an agreement with Harvard that called for Soporex to pay $75,000 per week on the

existing debt and to pay the existing debt in full by July 28, 2008.  (Dkt. 24, Ex. 1).

The agreement did not include any provision regarding future credit sales.

Following the May 22, 2008, agreement, Harvard and Soporex engaged in

discussions relating to future credit sales.  On June 6, 2008, Harvard and Soporex

entered into an Exclusive Purchase Agreement calling for Soporex to exclusively

Report and Recommendation
Plaintiff's Motion for Summary Judgment
*Harvard Drug v. Linehan*; 08-13617

purchase, with some exceptions, various items from Harvard from that date

through December 31, 2008, and to pay for those new purchases within 30 days of

the invoice date.  (Dkt. 24, Ex. 2).  Additionally, Linehan, on the same date the

Exclusive Purchase Agreement was executed, signed a Guaranty, which provided

that Linehan would personally guaranty payment to Harvard, up to $2,000,000, for

the products purchased by Soporex pursuant to the Exclusive Purchase Agreement.

(Dkt. 24, Ex. 3).

Soporex defaulted on the payment terms of the June 6, 2008, Exclusive

Purchase Agreement and, on July 24, 2008, Harvard and Soporex entered into a

First Amendment to the Exclusive Purchase Agreement which, generally,

acknowledged that the existing debt associated with the Exclusive Purchase

Agreement was approximately $1.4 million and that interest of 7.5% would be paid

on the debt from July 22, 2008.  Linehan did not sign the amendment to the

Exclusive Purchase Agreement on behalf of Soporex because he had been involved

in a tragic car accident on July 18, 2008, which left him severely injured and took

the life of his wife and another passenger.  The June 6, 2008, Guaranty executed by

Linehan was not amended.  Linehan did not have significant involvement in the

operation of Soporex after the accident.

Things did not go well after for Soporex after July 24, 2008 and on August 19, 2008, Harvard made a demand to Soporex for the approximately $2 million debt relating to purchases prior to May 22, 2008, and for the approximately $1.4 million debt, plus interest, relating to purchases under the Exclusive Purchase Agreement made after June 6, 2008. Harvard made a similar demand, at the same time, to Linehan limited to the approximately $1.4 million debt plus interest.

## III.   STANDARD OF REVIEW

Harvard is seeking a summary judgment in his favor. Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Jurisdiction in this matter is based on diversity and therefore the law of the forum state, in this case Michigan, applies.  *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).  Additionally, the parties agree, based on the pleadings, that Michigan law applies to the substantive issues relevant to this case.

## IV.   ANALYSIS AND CONCLUSIONS

Plaintiff's position can fairly be summarized as arguing that defendant signed a personal guaranty for the debt of Soporex relating to product supplied by Harvard to Soporex after June 6, 2008 and the amount of the debt is approximately $1.4 million.  Additionally, plaintiff contends that defendant is responsible for interest on that amount starting on July 28, 2008, and that plaintiff is entitled to recover its attorney fees under the terms of the guaranty.

Defendant's position can fairly be summarized as arguing that (1) the personal guaranty is void because defendant was under duress at the time he signed the guaranty, (2) the personal guaranty is void because defendant was fraudulently induced into signing it, (3) plaintiff should be equitably estopped from recovering more than $1 million because plaintiff had led defendant to believe that another person would make a personal guaranty for $1 million until just before defendant was asked to sign the personal guaranty for $2 million, and (4) plaintiff is not entitled to recover interest under the terms of the First Amendment to the Exclusive Purchase Agreement against defendant because he never personally agreed to pay interest.[1]

---

[1] In his response to plaintiff's motion, defendant did not question plaintiff's entitlement to reasonable attorney fees if plaintiff prevails on this motion but defendant did challenge the amount of attorney fees plaintiff should receive.  At

B.    <u>Duress</u>

Defendant contends that he was under duress at the time he signed the personal guaranty of the Soporex debt.  The factual basis for that claim is that defendant knew that some of Soporex's "patients" suffered from chronic conditions and relied on medications supplied by Soporex for their treatment without which the patients' condition "could worsen" or they could potentially die.  Additionally, defendant contends that plaintiff knew that Soporex was running low on these medications at the time the guaranty was signed and the medications were critical to the health of some of Soporex's patients.  In order to supply these individuals with their needed medications, defendant states he was coerced into signing the guaranty.  (Dkt. 40, pp. 12-14).

Both parties cite *Apfelblat v. National Bank Wyandotte-Taylor*, 158 Mich. App. 258, 404 N.W.2d 725 (1987) in support of their respective positions.  The court in *Apfelblat* found that "[d]uress requires compulsion or coercion by which one is illegally forced to act by fear of serious injury to person, reputation or fortune [and] [f]ear of economic ruin alone is insufficient to establish economic

_____

the hearing on the present motion, the parties stipulated that damage issues should not be addressed by the court at this time in that plaintiff intended on amending its complaint to present additional claims for damages and that damages should be reserved until a decision was made on defendant's liability for plaintiff's claims.

duress; it must be established that the person applying the coercion acted

unlawfully." *Id.*  The plaintiff there had threatened to enforce its contractual rights

and that caused the defendant to make a claim of duress in the breach of contract

action.  The court found that a threat to enforce a contractual right was not an

unlawful or illegal act.  *Id.*  Thus, a valid duress defense under Michigan law

requires proof that compulsion or coercion was used in some illegal or unlawful

manner to force a desired result.  A party that merely fears "economic ruin" that

does not result from the illegal or unlawful coercion of another does not suffer

economic duress under Michigan law.[2]  In the present case, defendant cannot

identify any illegal or unlawful conduct employed by plaintiff to coerce defendant

into signing the guaranty.  Under Michigan law, the illegal, unlawful, or perhaps

---

[2] In *Kelsey-Hayes v. Galtaco Redlaw Castings*, 749 F.Supp. 749 (E.D. Mich. 1990) a judge of this court recognized that Michigan law at that time required a showing of an unlawful or illegal act to state a valid claim of economic duress. However, the court noted that the more modern view, expressed by other courts, was that a wrongful act was sufficient and that if the Michigan Supreme Court were called upon to consider the issue they would likely find that a wrongful act was sufficient.  There a threat to breach an otherwise valid contract was sufficiently "wrongful" to find that a valid claim of duress was made.  Even if a "wrongful" standard, rather than illegal or unlawful, was applied to these circumstances, defendant's allegations still would fall short because defendant has not argued that plaintiff threatened to breach a valid contract to supply the products defendant requested.  Indeed, plaintiff was unwilling to continue to supply products to defendant in the face of a significant unpaid debt and such conduct could not reasonably be viewed as being wrongful.

wrongful conduct by the other party to the contract is a necessary predicate to a

duress defense and such conduct has not been alleged by defendant.  The fact that

defendant did not have a reasonable economic alternative to signing the guaranty in

order to keep Soporex in business does not state a valid duress defense that would

void the guaranty.[3]

     B.    <u>Fraudulent Inducement</u>

Defendant claims that he was fraudulently induced into signing the guaranty

agreement as a result of a last minute change in the bargaining position of plaintiff,

which prevented Mickey Letson from also guarantying payment for medications

supplied to Soporex and, as a result of "representations" made by Letson regarding

the type of products that would be supplied to Soporex, if defendant signed the

guaranty.  (Dkt. 40, pp. 14-16).  In order to state a valid defense of fraudulent

inducement, defendant must show (1) that there was a material misrepresentation

by plaintiff, (2) that the representation was false, (3) that when plaintiff made the

representation plaintiff knew it was false, or it was made recklessly, without

_____

[3] The health related needs of defendant's customers are of little relevance to
this analysis.  It is reasonably assumed that in the American marketplace
defendant's customers could have gone to any number of alternate sources for their
medications.  This assumption is borne out by the deposition testimony of Mickey
Letson when he described his successful attempts to find other medication sources
for the Soporex "patients." (Dkt. 40, Ex. T, p. 153).

knowledge of its truth and as a positive assertion, (4) that plaintiff made the

representation with the intention that defendant would act on it, (5) that defendant

acted in reliance on the representation and (6) that defendant suffered damage.

*Belle Isle Grill v. City of Detroit*, 256 Mich. App. 463, 666 N.W.2d 271 (2003).

Additionally, the misrepresentations must be made "under circumstances in which

the assertions may reasonably be expected to be relied upon and are relied upon."

*Begola Services v. Wild Bros.*, 210 Mich. App. 636, 534 N.W.2d 217 (1995).

With respect to the "representation" by plaintiff that Mickey Letson would

be a co-guarantor, defendant has not demonstrated that he acted in reliance on the

representation because defendant knew that Letson would not be a co-guarantor at

the time that defendant signed the guaranty. The act-in-reliance component of the

fraudulent inducement test must relate to a party, believing that the representation

is true, obligating himself or herself in reliance on the representation. Here,

defendant clearly knew, albeit not for very long, that Letson would not be a co-

guarantor and defendant proceeded to sign the guaranty. The causal relationship

between the representation and the creation of the obligation was thus broken when

defendant knew Letson would not be signing the guaranty before defendant signed

it. Although defendant, after learning Letson would not be signing, may not have

had long to decide whether to proceed with signing the guaranty for the increased

amount, there was enough time to recognize the significance of the circumstances and consult with counsel before signing, which defendant acknowledged that he did.  A person who is aware of all the facts prior to signing a contract cannot be the victim of fraud.  *Cooper v. Auto Club Insurance Association*, 481 Mich. 399, 414-15, 751 N.W.2d 443 (2008).  Additionally, it is not uncommon for commercial negotiations to involve changing terms until the terms are acceptable to both sides and the agreement is struck.  These negotiations involved individuals, on both sides, with business experience, education and sophistication who acted on the advice of counsel.

Defendant also asserts that he was fraudulently induced into signing the guaranty by the statement of Letson, made before the guaranty was signed. The statement attributed to Letson by defendant is "when we get this deal wrapped up, you'll get everything you need [and that Harvard Drug has] everything you need."  (Dkt. 40, p. 15).  Defendant asserts that he "relied" on this statement but "when Harvard sent the first two shipments of medication, they did not contain the medications ordered by Soporex including the quantity of Brovana ordered or any Performist."  *Id*.  Defendant claims these statements by Letson were false based on the claim that what had been ordered had not been delivered in the first two shipments following the signing of the purchase agreement and personal guaranty.

Defendant does not claim they were never delivered but only that they were not delivered in the first two shipments sent after the purchase agreement was signed on June 6, 2008.

Plaintiff argues that this claim of fraudulent inducement fails for several reasons. The reasons include: (1) defendant has not shown that Letson made the statement with fraudulent intent, (2) defendant has not demonstrated that the statement was a material misrepresentation, (3) defendant has not established that the statement was actually false in that the amount of Brovana shipped was in excess of what was ordered during the first two weeks following the guaranty being signed, (4) no one from Soporex claimed at the time that the product supplied was less than had been required, and (5) defendant did not rely on the statement in signing the guaranty. (Dkt. 41, pp. 5-9).

With respect to the issues that defendant must establish regarding a fraud in the inducement defense, the first element that defendant would have to establish is that plaintiff made a material representation. Defendant contends that the "representation" made by plaintiff was the statement from Letson to the effect that when the deal is wrapped up defendant will have everything that is needed. It is somewhat difficult to understand exactly what was "represented" by this statement from the literal words that defendant alleges Letson used. However, it is clear

Report and Recommendation
Plaintiff's Motion for Summary Judgment
*Harvard Drug v. Linehan*; 08-13617

from the context of these pleadings that defendant alleges that the Letson statement

was a representation of what type and quantity of medications were to be delivered

during the first week or two following the signing of the critical documents at issue

here.  Defendant obviously contends that a statement as broad as Soporex will get

"everything" it needs translates to a specific promise that a certain quantity of

Brovana, and perhaps Performist, will be supplied on a certain date.  Taking this

allegation in the light most favorable to defendant, the undersigned cannot find that

Letson's statement is a promise that a particular medication would be supplied at a

particular time or otherwise relates to the actual performance of plaintiff under a

contract in any specific way.  The Exclusive Purchase Agreement required that

Soporex provide order projections "not less than two weeks prior to placing each

order."  (Dkt. 41, Ex. 1).  The first order, following the purchase agreement, was

not placed after an order projection had been provided by Soporex so, if the order

was short, it would not have been a breach of the purchase agreement.  If plaintiff

had failed to provide a medication, after the order projection, the remedy under the

purchase agreement would have been to allow defendant to purchase the

medication elsewhere, not to rescind the agreement.  Letson's statement simply did

not constitute a "representation" of specific conduct on the part of the plaintiff.

Therefore, a failure to provide medications requested in the first two weeks, if

there was a failure, could not in any reasonable fashion be viewed as breaching a promise or representation that Letson had made.

While the failure to make a "representation" would, without more, defeat a fraud in the inducement defense, the remaining elements of such a claim will be analyzed for the sake of completeness. The second element is a requirement that the representation made be proven false. Defendant contends that the Letson statement was false because the "first two shipments of medication ... did not contain the medications ordered by Soporex including the quantity of Brovana ordered or any Performist." (Dkt. 40, p. 15). Defendant's claim as to what was ordered references an e-mail on June 6, 2008, at 1:28 p.m. from Elene Mcabee. That e-mail identifies certain items that will be shipped on Friday, June 6, 2008, and other items that are to be shipped on Monday, June 9, 2008, or "when available." (Dkt. 40, Ex. L). The order was 216 cartons of Performist and 547 cartons of Brovana. For the reasons stated earlier, the Letson statement did not constitute a promise that all medications ordered would be produced on a specific date and, therefore, that statement does not become false when the first order is not filled on the date it is made. Plaintiff, in its response, demonstrates that within the first week following the execution of the purchase agreement and guaranty more Brovana was shipped than had been ordered on the first day and the order for

Performist was cancelled.  (Dkt. 41, pp. 6-8).  Defendant has not refuted those calculations.  A promise of performance on a contract could only be "false" if there was, in fact, a subsequent breach of the contract, which was not the case here. Defendant has not demonstrated, by reference to the terms of the contract or to prior course of dealing, that providing the items ordered within a week was a breach of the agreement between the parties.  Merely stating that the items were not shipped the day they were ordered does not establish that a breach of the agreement took place and therefore there was no falsity in anything Letson said.

The third element of a fraud claim is that the person making the representation knew the statement was false when it was made or the statement was made recklessly without any knowledge of its truth.  Defendant does not attempt to establish that Letson made the statement knowing it  was false or that he made it recklessly.  Rather, defendant says, citing *Lenawee County Bd. Of Health v. Messerly*, 417 Mich. 17, 331N.W.2d 203 (1982) and *Shell Oil Co. v. Estate of Kent*, 161 Mich. App. 409, 411 N.W.2d 770 (1987), that it does not have to show that Letson intentionally made a false statement.  The cases cited by defendant do not relieve him of the burden to demonstrate that Letson intentionally made a false statement in that those cases deal with issues of mutual mistake in a contract rather than fraud in the inducement.  Defendant has, therefore, failed to demonstrate that

Letson made an intentionally false statement or that he made the statement recklessly.

The fourth element of a fraud in the inducement defense is that the representation be made with the intent that it be relied on. Defendant asserts that Letson made the representation to induce defendant to execute the guaranty. (Dkt. 40, 16). Plaintiff does not dispute this assertion and it appears that, if the statement was made as claimed, it was made with the intent to encourage defendant to sign the purchase agreement and guaranty. However, that is not the same thing as making a statement with the reasonable expectation that it would be relied on with respect to some specific issue. Nothing defendant has demonstrated indicates that Letson made the statement believing that defendant would rely on it to expect that a certain quantity of Brovana and Performist would be available on June 6, 2008.

The last element of significance is that there was reliance on the false representation. Defendant asserts that the representations by Letson were important to the decision to sign the purchase agreement and guaranty. Plaintiff points to defendant's deposition in which defendant stated that if he had known that the amount of Brovana in the first order would not be shipped on the first day that "doesn't mean [he] wouldn't have signed [the purchase agreement and guaranty]." (Dkt. 41, Ex. 3, p. 68). Plaintiff contends that this testimony by

defendant shows that he did not rely on what Letson said in signing the contracts. Reliance in this context might be viewed as akin to a "but for" test. *See e.g. D E & J Limited Partnership v. Conaway*, 284 F.Supp.2d 719, 747 (E.D. Mich. 2003) ("'Transaction causation,' another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff to engage in the transaction in question.  As such, transaction causation is akin to 'actual' or 'but for' causation.") (internal citations omitted).  That is, but for the representation by Letson would defendant have signed the guaranty?  Defendant's own deposition testimony establishes that he would not have refused to sign the contracts just because the first order of Brovana would not be shipped on the day it was ordered. If there was anything false in the Letson statement, it could only be that the Brovana was not shipped on the first day as opposed to the first week.  Nothing defendant has demonstrated would suggest that such a difference would have caused him not to sign the contracts and, therefore, defendant has not demonstrated that he acted in reliance on any false statement that Letson made.     C.    Equit

able

Estop

pel

Defendant also argues that plaintiff should be estopped from pursuing a claim under the terms of the guaranty for an amount exceeding one million dollars. The basis of defendant's position is the allegation that plaintiff initially indicated that it would accept a one million dollar guaranty from Letson and from defendant but later indicated that plaintiff would have to sign a two million dollar guaranty because Letson was not allowed to sign a guaranty. Defendant contends that this last minute change in position by plaintiff left him no choice but to sign the greater guaranty. (Dkt. 40, pp. 16-17). Plaintiff contends that there was no misrepresentation by any of its agents regarding the amount of the guaranty ultimately agreed to, that defendant clearly knew what the terms of the guaranty were before he signed it and that, therefore, an equitable estoppel claim fails as a matter of law.

"Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Wojnicki v. Warren Geriatric Villiage*, 2009 WL 3323257 (Mich. App. 2009). "Equitable estoppel is applied only when a party justifiably relies and acts on the belief that misrepresented facts are true." *Id.* Stated another way, "[e]quitable

estoppel arises where one party has knowingly concealed or falsely represented a

material fact, while inducing another's reasonable reliance on that

misapprehension, under circumstances where the relying party would suffer

prejudice if the representing or concealing party were subsequently to assume a

contrary position." *Adams v. City of Detroit*, 232 Mich. App. 701, 591 N.W.2d 67

(1999).

Defendant  acknowledges that he was aware, prior to signing the guaranty,

that plaintiff required that the amount of the guaranty he was responsible for be

increased to two million dollars.[4]  He appears to contend that plaintiff knew all

along that the Letson guaranty would not be allowed but that plaintiff led him to

believe it would be until the last minute.[5]  Defendant does not cite any authority for

---

[4] Plaintiff's CEO Randolph Friedman testified during a deposition that a
guaranty from Letson would not be acceptable to the board and, therefore, if
Soporex wanted a two million dollar line of credit, the guaranty would have to be
in that amount.  (Dkt. 41, Ex. 12, pp. 48-49).  This suggests that defendant, after
learning that the Letson guaranty was not available, elected to increase the amount
of his personal guaranty in order to increase the line of credit to the higher amount.

[5] The factual basis for defendant's argument is the claim that CEO Friedman
"knew from the beginning Letson would not be allowed to execute a guaranty."
(Dkt. 40, p. 17).  Defendant does not cite to any portion of the record for this
assertion.  Friedman's deposition testimony does not support this claim.  Friedman
stated he let "everyone" know the board would not accept a guaranty from Letson
but only said that was before the relevant documents were signed without
specifying how long before.  (Dkt. 41, Ex. 12, pp. 48-49).  It is not clear what
defendant meant by "from the beginning" but one could reasonably assume it

the proposition that equitable estoppel should apply to circumstances where he signed the obligation knowing what the true facts are even if he had been mislead at an earlier point of time, as he claims.  Michigan law seems to clearly hold that there is no equitable estoppel where a persons signs a contract knowing what the true facts are, a situation that defendant does not dispute here.  "'One who is cognizant of all the material facts can claim nothing by estoppel.'"  *Richards v. Lowrie & Webb Lumber*, 317 Mich. 42, 26 N.W.2d 590 (1947).  Defendant's equitable estoppel claim fails as a matter of law because he was aware of all the facts prior to signing the guaranty.

> D.     Amended Agreement

Lastly, defendant argues that he should not be held responsible for the interest on plaintiff's claim because he did not agree to pay interest in the guaranty he signed.  Plaintiff states that the obligation to pay interest arose from an amendment to the purchase agreement and that the terms of the guaranty that defendant signed obligates him to be bound by future amendments to the purchase agreement.

---

meant from the beginning of these negotiations which Defendant's counsel stated was around May 24, 2008.  (Dkt. 40, Ex. D, ¶¶ 10-11).  There is nothing in the record to support the claim that plaintiff's agents misled defendant from the outset of the negotiations regarding Letson's willingness and authorization to execute a guaranty.

On June 6, 2008, defendant signed an Exclusive Purchase Agreement on behalf of Soporex and he also signed a Guaranty.  The Exclusive Purchase Agreement related to future purchases of medications from Harvard by Soporex.  The agreement did not include an obligation to pay interest on outstanding balances.  The Guaranty required that defendant guaranty the payment of "sums due to HDG under the New Invoices" plus "all other charges accruing in respect of Soporex's obligations under such New Invoices and costs and expenses of collection, including a reasonable attorney's fee ..."  (Dkt. 41, Ex. 7).  Additionally, the Guaranty provided that defendant "hereby consents to any modifications and amendments to the New Invoices agreed to by Soporex and agrees that this Guaranty shall relate to the obligations of Soporex under such New Invoices as they may exist before and after all such modifications or amendments and hereby waives any notice of such a modifications or amendments."  *Id*.  On July 24, 2008, Harvard and Soporex executed a First Amendment to Exclusive Purchase Agreement Dated June 6, 2008.  (Dkt. 41, Ex. 10).  The amendment included, among other terms, an obligation on behalf of Soporex to pay interest on balances due for purchases made pursuant to the Exclusive Purchase Agreement.  Defendant did not sign this amended agreement on behalf of Soporex due to the fact that he

was hospitalized due to a tragic automobile accident that had happened a few days before the amended agreement was signed.

Michigan law generally provides that any "material alteration of a principal debt or obligation operates to completely discharge any guaranty of that debt or obligation." *Wilson Leasing v. Seaway Pharmacal*, 53 Mich. App. 359, 370, 220 N.W.2d 83 (1974).  An alteration of the principal debt that increases that debt is material.  *Id.*  An exception to this general rule is where the alteration of the principal debt is "anticipated as a possibility" by the guaranty agreement in which case the surety is not discharged by the amendment.  *In re Bluestone Estate*, 121 Mich. App. 659, 667, 329 N.W.2d 446 (1982).  In *Bluestone* the "fact that the guarantors expressly waived notice to future modifications demonstrates that they 'anticipated' the possibility of such modifications [and] refinancing agreements which modified [the] obligations did not operate to discharge the guarantors, even if the modifications were material."  *Id.*

Similar to the agreement in *Bluestone*, the instant guaranty provided that the guarantor consented to modifications of the purchase agreement and waived notice of any modification or amendment.  Applying *Bluestone* to the facts of this case directs the determination that the original purchase agreement "anticipated as a possibility" a future modification of the purchase agreement and therefore the

Report and Recommendation
Plaintiff's Motion for Summary Judgment
*Harvard Drug v. Linehan*; 08-13617

modification here does not result in the discharge of the guaranty.  The addition of the obligation to pay interest on the debt owed by Soporex modifies defendants obligation under the guaranty making defendant liable for that interest in addition to the other obligations.

## IV.    RECOMMENDATION

The pleadings in this case demonstrate that there are no material facts in controversy that would support the defenses raised by defendant and, therefore, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

Report and Recommendation
Plaintiff's Motion for Summary Judgment
*Harvard Drug v. Linehan*; 08-13617

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

Date: November 25, 2009                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>November 25, 2009,</u> I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: <u>Jeffrey M. Stefan, Stephen E. Glazek, and Donna A. Heiser</u>.

<u>s/Tammy Hallwood</u>
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
tammy_hallwood@mied.uscourts.gov