UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HARVARD DRUG GROUP, LLC,**

                **Plaintiff(s),**         **CASE NUMBER: 08-13617**
                                                   **HONORABLE VICTORIA A. ROBERTS**

**v.**

**STEPHEN D. LINEHAN,**

                **Defendant(s).**
_____/

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Harvard Drug Group, LLC is a wholesale distributor of medication. Soporex, Inc. purchased medications from Harvard. Defendant Stephen Linehan is the Chairman and CEO of Soporex.

In a letter dated May 22, 2008, Linehan acknowledged that Soporex owed Harvard $1,918,152.94 for unpaid orders.

On June 6, 2008, Harvard and Soporex entered into an Exclusive Purchase Agreement. Soporex agreed to purchase nebulizer medications exclusively from Harvard until December 21, 2008. On that same date, Linehan signed a Guaranty, which says he personally guarantees payment to Harvard, up to $2 million, for purchases Soporex makes pursuant to "New Invoices." "New Invoices" is defined as Soporex's additional purchases of pharmaceutical goods from Harvard beginning June 6, 2008.

1

On July 24, 2008, Harvard and Soporex signed a First Amendment to the Exclusive Purchase Agreement Dated June 6, 2008 ("First Amendment"). Soporex agreed to pay interest in the amount of 7.5% per annum on the "Open Account Balance." "Open Account Balance" is defined as the amount Soporex owes Harvard for purchases beginning May 22, 2008. Richard J. Sabolik, Soporex's President, signed the First Amendment. Linehan's Guaranty was not amended.

Harvard has been unable to collect on the entire of Soporex's unpaid balance – balances both before and since May 22, 2008.

Before the Court is Harvard's Motion for Summary Judgment. (Doc. #9). Harvard asks the Court to find Linehan liable under the June 6, 2008 Guaranty for the "New Invoices"; and, find Linehan must pay 7.5% interest pursuant to the First Amendment.

Magistrate Judge Michael Hluchaniuk recommends the Court GRANT Harvard's motion. (Doc. #46). The Magistrate Judge says: (1) Linehan's duress, fraudulent inducement, and equitable estoppel defenses fail; and (2) Linehan must pay interest on the debt owed by Soporex.

Linehan objects. He says the Magistrate Judge's Report and Recommendation ("R&R"): (1) fails to consider all evidence and inferences in the light most favorable to him; (2) inappropriately weighs the evidence, makes credibility determinations, and draws inferences; (3) does not consider material factual issues pertaining to the First Amendment, when it materially changed his obligations under his Guaranty; and (4) implies that he did not contest the propriety of Harvard's request for attorney fees.

The Court **ADOPTS** the Magistrate Judge's R&R.

2

## II. STANDARD OF REVIEW

The district court must conduct a de novo review of the parts of a magistrate judge's order to which a party objects. 28 U.S.C. §636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The requirement of de novo review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. §636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. *Flournoy v. Marshall*, 842 F.2d 875, 878 (6th Cir. 1988).

## III. APPLICABLE LAW AND ANALYSIS

### A. Linehan's Objections that When the Magistrate Judge Analyzed His Equitable Estoppel Defense, He: (1) Failed to Consider all Evidence and Inferences in a Light Most Favorable to Linehan; and (2) Inappropriately Weighed the Evidence, Made Credibility Determinations, and Drew Inferences in Favor of Harvard

Linehan says Harvard is equitably estopped from pursuing a claim against him for an amount that exceeds $1 million. According to Linehan, Harvard initially said he only had to sign a $1 million personal guaranty, and Mickey Letson, a Harvard employee and Soporex board member, would sign a $1 million personal guaranty.

The Magistrate Judge's R&R says:

> The factual basis for [Linehan's] argument is the claim that CEO [Randolph] Friedman "knew from the beginning Letson would not be allowed to execute a guaranty." (Dkt. 40, p. 17). [Linehan] does not cite to any portion of the record for this assertion. Friedman's deposition testimony does not support this claim. Friedman stated he let "everyone" know the board would not accept a guaranty from Letson but only said

3

> that . . . before the relevant documents were signed without specifying how long before. (Dkt. 41, Ex. 12, pp. 48-49). It is not clear what [Linehan] meant by "from the beginning" but one could reasonably assume it meant from the beginning of these negotiations which [Linehan's] counsel stated was around May 24, 2008. (Dkt. 40, Ex. D, ¶¶ 10-11). There is nothing in the record to support the claim that [Harvard's] agents misled [Linehan] from the outset of the negotiations regarding Letson's willingness and authorization to execute a guaranty.

Magistrate Judge's R&R, pp. 19-20, n.5.

In addition, the Magistrate Judge says:

> [Harvard's] CEO Randolph Friedman testified during a deposition that a guaranty from Letson would not be acceptable to the board and, therefore, if Soporex wanted a two million dollar line of credit, the guaranty would have to be in that amount. (Dkt. 41, Ex. 12, pp. 48-49). This suggests that [Linehan], after learning that the Letson guaranty was not available, elected to increase the amount of his personal guaranty in order to increase the line of credit to the higher amount.

Magistrate Judge's R&R, p. 19, n.4.

Linehan says the Magistrate Judge ignored his evidence that shows: (1) Friedman knew from the beginning of the negotiations that Letson could not sign a $1 million personal guaranty, but Harvard did not inform Linehan of this fact and the fact that Linehan's personal guaranty would be $2 million until shortly before he signed the Guaranty; (2) Harvard referenced two guaranties throughout the negotiations; (3) Harvard falsely stated on multiple occasions that Letson was provided a proposed personal guaranty for his signature; and (4) the Exclusive Purchase Agreement referenced two guaranties until Harvard created the final draft.

Further, Linehan says he did not "elect" to sign the $2 million Guaranty; he signed the Guaranty based on Soporex's critically low inventory of nebulizer medications, the fact that Soporex's customers relied on those medications for their life

4

threatening conditions, Soporex's inability to obtain an alternative source for the medications, and Harvard's last minute notification that Letson could not sign a personal guaranty. According to Linehan, the Magistrate Judge's statement that he "elected" to sign the Guaranty – based on testimony from Harvard's CEO – inappropriately draws inferences in Harvard's favor.

"An equitable estoppel arises where (1) a party by representation, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on this belief, and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." *Hughes v. Almena Twp.*, 284 Mich. App. 50, 78 (2009) (citing *Howard Twp. Bd. of Trustees v. Waldo*, 168 Mich. App. 565, 575 (1988)). "[A] party who is actually 'cognizant of all the material facts can claim nothing by estoppel[.]'" *Sisk-Rathburn v. Farm Bureau Gen. Ins. Co. of Michigan*, 279 Mich. App. 425, 429 (2008) (citing *Cudahy Bros. Co. v. W. Michigan Dock & Mkt. Corp.*, 285 Mich. 18, 26-27 (1938)); *see also Thirlby v. Rainbow*, 93 Mich. 164, 170 (1892) ("There can be no estoppel unless a party is misled to his prejudice by the conduct of the person against whom it is set up, and acts are done relying upon conduct calculated to mislead") (citations omitted).

Regardless of why Linehan signed the Guaranty, and what Harvard may have told Linehan during negotiations, it is undisputed that Linehan knew – before he signed the Guaranty – that Letson could not sign a personal guaranty, and his personal guaranty would be $2 million.

Even if the Magistrate Judge considered all of Linehan's evidence, and the reasons why Linehan says he signed the Guaranty, his equitable estoppel defense fails

5

as a matter of law; Linehan was cognizant of all the material facts before he signed the Guaranty.

### B. Linehan's Objection that the Magistrate Judge Failed to Consider all Evidence and Inferences in a Light Most Favorable to Him When the Magistrate Judge Analyzed His Duress Defense

The Magistrate Judge's R&R says:

> The health related needs of [Linehan's] customers are of little relevance to th[e] [duress] analysis. It is reasonably assumed that in the American marketplace [Linehan's] customers could have gone to any number of alternate sources for their medications. This assumption is borne out by the deposition testimony of Mickey Letson when he described his successful attempts to find other medication sources for the Soporex "patients." (Dkt. 40, Ex. T, p. 153).

Magistrate Judge's R&R, p. 9, n.3.

Linehan says the Magistrate Judge's statement that his customers could have obtained medication from other sources – based on testimony from a Harvard employee – inappropriately draws an inference in Harvard's favor, and ignores his evidence that Soporex could not obtain alternative sources for the medication needs of its patients.

Further, Linehan says the Magistrate Judge ignored his argument that he was under duress when he signed the Guaranty, because Medicare and Soporex's pharmacy licenses prohibit him from stopping medication shipments to Soporex's customers.

"Duress requires compulsion or coercion by which one is illegally forced to act by fear of serious injury to person, reputation or fortune. Fear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully." *Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 158

6

Mich. App. 258, 263-64 (1987) (citations omitted).

Regardless of whether Soporex's customers could obtain medication elsewhere, and regardless of the requirements of Medicare and Soporex's pharmacy licenses, Linehan's duress defense fails. Harvard did not act unlawfully by requiring Linehan to sign a $2 million Guaranty as a condition to continued shipments to Soporex.

### C.   Linehan's Objection that the Magistrate Judge Failed to Consider Material Factual Issues Pertaining to the First Amendment, when it Made a Material Change to the Obligations Under His Guaranty

According to Linehan: (1) he did not guarantee the "Open Account Balance" (incorrectly referred to in Linehan's objections as "Outstanding Invoices"); (2) the Guaranty does not address interest payments, nor did he consent to pay interest; (3) Harvard repeatedly sought his consent to the First Amendment; (4) Harvard's general counsel admitted that amendments to his Guaranty had to be in writing; (5) increasing the amount payable on the original obligation constitutes a material alteration of his Guaranty that he must consent to; and (6) modification of his Guaranty must be supported by consideration.

The Court agrees with the Magistrate Judge's recommendation that Linehan is obligated to pay interest on the New Invoices.

First, "New Invoices" (used in Linehan's Guaranty) and "Open Account Balance" (used in the First Amendment), refer to Soporex's additional purchases from June 6, 2008, of pharmaceutical goods from Harvard. While "Open Account Balance" refers to purchases made beginning May 22, 2008, Soporex did not make any purchases from Harvard between May 22, 2008 and June 6, 2008. Therefore, "New Invoices" and "Open Account Balance" essentially have the same meaning.

Second, while Linehan's Guaranty does not expressly provide that he is responsible for interest payments, it does say he consents to modifications and amendments to the New Invoices agreed to by Soporex, and waives notice of such modifications and amendments.

Michigan law generally provides that "[a]ny material alteration of a principal debt or obligation operates to completely discharge any guaranty of that debt or obligation[.]" *Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 53 Mich. App. 359, 369 (1974) (citations omitted). An alteration of a principal debt that increases that debt is material. *Id.* An exception to this general rule is where the alteration of the principal debt is "anticipated as a possibility" by the guaranty agreement. *See Estate of Bluestone v. Gen. Elec. Credit Corp.*, 121 Mich. App. 659, 667 (1982). Linehan's Guaranty says:

. . .

> Guarantor does . . . unconditionally and absolutely . . . guarantee to [Harvard] . . . the full and prompt payment . . . of all principal, service charges and other sums payable under the New Invoices.

. . .

> Guarantor hereby consents to any modifications and amendments to the New Invoices agreed to by Soporex and agrees that this Guaranty shall relate to the obligations of Soporex under such New Invoices as they may exist before and after all such modifications or amendments and hereby waives any notice of such modifications of amendments.

"The fact that [Linehan] expressly waived notice to future modifications demonstrates that [he] 'anticipated' the possibility of such modifications. Hence, any . . . agreements which modified [Soporex's] obligations did not operate to discharge [Linehan], even if the modifications were material." *See id.* at 667-68.

Third, Harvard's general counsel testified at his deposition that a signature line

8

was included on the first draft of the First Amendment because he felt it would be appropriate to have him sign the First Amendment; it was not absolutely necessary. Further, in an e-mail dated July 23, 2008, Soporex's general counsel said "I will take a look at this today and finalize. I don't believe [Linehan] is in a position to sign anything given his condition. Please consider whether we really need [Linehan] to sign. I think the guaranty gives Harvard ample protection and that [Linehan's] signature on the first amendment is really a confirmation of his obligations under the guaranty."

Finally, Linehan's Guaranty was not amended or modified; only the Exclusive Purchase Agreement was amended, and the amendment was in writing.

### D.  Linehan's Objection that the Magistrate Judge Implies that He Did not Contest the Propriety of Harvard's Request for Attorney Fees

The Magistrate Judge's R&R says:

> In his response to [Harvard's] motion, [Linehan] did not question [Harvard's] entitlement to reasonable attorney fees if [Harvard] prevails on this motion but [Linehan] did challenge the amount of attorney fees [Harvard] should receive. At the hearing on the present motion, the parties stipulated that damage issues should not be addressed by the court at this time in that [Harvard] intended on amending its complaint to present additional claims for damages and that damages should be reserved until a decision was made on [Linehan's] liability for [Harvard's] claims.

Magistrate Judge's R&R, pp. 6-7, n.1.

As both Linehan and the Magistrate Judge point out, damages are not before the Court now; Harvard withdrew its motion as to damages.

### IV.  CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R. Harvard's motion for summary judgment on Linehan's liability is **GRANTED**. Linehan is liable for New Invoices under

9

his Guaranty and the First Amendment; he guaranteed payment of principal and interest on the New Invoices, up to $2 million.

By **February 17, 2010**, Harvard may file a combined motion for leave to amend its complaint to increase the amount Linehan owes under the Guaranty, and motion for attorneys fees. Harvard may include its renewed affidavits regarding its attorney fees. In his response brief, Linehan may assert his arguments that Harvard is either not entitled to attorney fees, or Harvard's attorney fees are unreasonable.

**IT IS ORDERED**.

                                       /s/ Victoria A. Roberts  
                                       Victoria A. Roberts  
                                       United States District Judge

Dated: February 3, 2010

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 3, 2010.<br><br>s/Linda Vertriest<br>Deputy Clerk |